[File No. 6648.]

J. K. MURRAY, Petitioner and Appellant, v. FRED MUTSCHEL-
KNAUS, J. Q. Jacobs, and Richard Fiedler, County Commis-
sioners of Hettinger County, O. D. Herstein, County Auditor,
and A. B. Switzer, County Treasurer, Defendants and Appellants,

and

THE STATE OF NORTH DAKOTA, Doing Business as the Bank
of North Dakota, and Nick Reinert, Interveners and Appellants.

(291 N. W. 118.)

1

Opinion filed February 24, 1940.   On Rehearing April 1, 1940.

*John F. Sullivan, Murray & Murray,* and *Horace C. Young,* for petitioner and appellant.

*C. F. Kelsch,* Assistant Attorney General, for defendants and appellants.

*Robert A. Birdzell* and *T. A. Thompson,* for interveners and appellants.

MORRIS, J.   This case involves a proceeding brought under chapter 225, N. D. Session Laws 1939.   The plaintiff is, and has been since prior to 1929, the owner or mortgagee of certain real estate in Hettinger county, North Dakota.   On July 7, 1939, the plaintiff filed a petition with the board of county commissioners, under the provisions of chapter 225, wherein he sought a redetermination of any and all tax charges against this real estate for the years 1929 to 1939, inclusive, and asked that the tax charges be made to conform to the amount that

would ultimately result from a reduction of the valuation of said real estate to the true value thereof in money. The board of county commissioners rendered a decision holding that it had no jurisdiction to determine tax charges or values for the years 1929 to 1937, inclusive, and that as to the year 1939 the petition was premature. They considered the petition with reference to the tax charges for the year 1938 and determined them to be the same as had been fixed by the assessors and boards of equalization, and denied to the plaintiff any reduction in valuation or tax charges for the year 1938.

The plaintiff appealed from the decision of the board of county commissioners to the district court of Hettinger county. After a trial, at which both questions of law and fact were presented to the district court, judgment was rendered upon the court's findings of fact and conclusions of law. The determination and order of the board of county commissioners was affirmed except as to the valuations and tax charges for the year 1938. As to that year, the court redetermined the extent to which each of the properties of the plaintiff could be lawfully charged with taxes, fixed the true value of these properties in money, and determined the tax charge that might be placed upon said properties for the year 1938. These valuations and charges were much less than those that had been determined for that year in the process of tax assessment and equalization.

The plaintiff appeals. He approves the findings of fact, but challenges the correctness of the trial court's conclusions of law to the effect that no relief could be granted under the statute with respect to the years 1929 to 1937, inclusive. The plaintiff contends that the court should have redetermined the valuations and tax charges upon his lands for all of those years, and that in failing to do so the court has erred.

The defendants also appeal from the judgment. They challenge the sufficiency of the evidence to warrant the court in finding the values which he determined to be the true values in money of the property herein involved for the year 1938. They controvert the construction of the statute under which the trial court applied it to the 1938 valuations as being retroactive and assert that the statute is unconstitutional because it violates §§ 10, 13, 20, 69 and 176 of the Constitution of the state of North Dakota.

Besides the plaintiff, who is the owner of the land involved, and the

defendants who are county officers of Hettinger county, the parties also include two interveners. The state of North Dakota, doing business as the Bank of North Dakota, has intervened and contends that it has an interest in the determination of the questions involved in the controversy because it holds general obligation bonds and registered warrants of the county, registered warrants of school districts in which some of the land is situated, and certificates of indebtedness of the state of North Dakota. Nick Reinert has also intervened. He is a real estate taxpayer of the county who has paid his taxes upon lands in the county, based upon the assessed valuations previously fixed by the taxing officials and boards of equalization for the same years for which the plaintiff now seeks to have his valuations and tax charges reduced.

The contentions of the parties disclose two major controversies. The first relates to the construction of the statute; the second involves its constitutionality. We will first consider the contentions pertaining to construction.

Section 1, of chapter 225, N. D. Session Laws 1939, declares that all taxes based on valuations in excess of the full and true value of taxable property are void to the extent of the excess. Section 2 determines who may seek redress under the act, and with respect to the time within which proceedings may be brought, says: "Each individual property owner, and each person having an interest in taxable property valued by local assessors, either individually, or jointly, or collectively, including taxing districts as such, may, within one year after any assessment becomes final, bring such proceedings as are herein provided for."

Section 3 sets forth the procedure for applying and for determining whether or not relief shall be granted. It places upon the board of county commissioners the duty and vests in them jurisdiction to hear and determine the petition "and to make a finding of the then full and true value of said property in money." If the petition requires the determination of tax charges, it is also made the duty of the board of county commissioners to determine the amount of the tax. This is determined by applying, to the full and true value of the property, the consolidated levy of the taxing district for each year set forth in the petition. It is then made the duty of the county treasurer, upon

receipt of the determination of the amount of the tax by the county commissioners, to issue a tax receipt upon payment of the amount so fixed. Section 4 provides that the failure of the petitioner to appear before the Board of Equalization or pursue other remedies for the reduction of the assessed valuation of his property, shall not preclude him from having the petition heard and determined under the act. Section 5 provides for an appeal to the district court. The court is required to try the issues de novo, and it is made the duty of the court to fix and determine "the proper and legal tax charges for any year or years as may be involved in said petition." Section 6 provides for an appeal to, and trial de novo in, the supreme court.

According to the arguments presented, three constructions are possible with respect to the prospective or retrospective application of this law. The petitioner contends that it applies not only to present and future taxes, but to all taxes levied heretofore and upon which title has not passed through the issuance of a tax deed and a judgment quieting title thereon. The district court laid emphasis on the provision of the act which states that a petitioner who comes within other terms of the act "may, within one year after any assessment becomes final, bring such proceedings as are herein provided for." With respect to the facts in this case, the court held that the assessment became final when the State Board of Equalization fixed the same and certified it to the county auditor of Hettinger county. This is done in August of each year. The petition in this case was filed with the board of county commissioners on, or about, the 7th day of July, 1939. Within one year prior to that date the State Board of Equalization had equalized and certified the assessments for the year 1938. It had not yet acted upon the assessments for the year 1939. The court, having in mind the one year provision above quoted, held that the county board had no jurisdiction to consider assessments for years prior to 1938 and that as to the year 1939 the application was premature since the assessment for the year had not yet become final through the action of the State Board of Equalization. As to the assessments for the year 1938, the court held that the petition was filed within proper time and that the board of county commissioners of Hettinger county had jurisdiction in the first instance and that the trial court had jurisdiction upon appeal from the determination of the Board.

The defendants and the interveners contend that the statute should be construed so as to give it a wholly prospective operation and that under such construction it can apply only to assessments made after the law became effective on July 1, 1939.

As to the 1939 taxes, the petition was clearly premature. Chapter 225 does not purport to give to the property owner the right to interfere with the process of assessment. It is only after the assessment becomes final that he may file a petition. The assessment process begins with the listing and valuation of the property by the local assessor, after which the assessment is passed upon by the local boards of review. The board of county commissioners at its July meeting then reviews the assessments with power to equalize as between classes of property and between the taxing districts within the county, under the provisions of § 2138, N. D. Compiled Laws 1913.

Sections 2141 to 2141a4, Supplement to Compiled Laws, provide for the membership and organization of a State Board of Equalization. This Board is required to meet on the first Tuesday in August. The State Board of Equalization "shall equalize the valuation and assessment of property throughout the state and shall have power to equalize the assessment of property in this state between cities and villages of the same county and between the different counties of the state," in the manner provided by statute. Supplement to Compiled Laws, § 2141a2. An abstract of the proceedings of the State Board of Equalization is then certified to each county auditor under the provisions of § 2142, N. D. Compiled Laws 1913. The state tax commissioner certifies the rate of state tax. N. D. Sess. Laws 1929, chap. 235. The county auditor spreads the assessment on his books in accordance with these certifications in the manner provided by § 2143, N. D. Compiled Laws 1913. The duties of the county auditor in this respect are purely ministerial. The actual process of assessment is completed by the certification by the State Board of Equalization. Nothing more remains to be done with reference to determining the values of property to be taxed. State ex rel. Conrad v.Langer, 68 N. D. 167, 277 N. W. 504.

The use of the word "final" in chapter 225, N. D. Session Laws 1939, is somewhat analogous to the manner in which that word is used in appeal statutes as applied to judgments from which appeals may

be taken. It is generally held that such judgments are those which dispose of the subject matter of the action as to all parties so far as the court before which the action is pending has power to dispose of it. Northern Indiana & S. M. Teleg. & Cable Co. v. People's Mut. Teleph. Co. 184 Ind. 267, 111 N. E. 4, P.U.R.1916C, 534; Johnson v. Merritt, 125 Va. 162, 99 S. E. 785; Cotton v. Butterfield & Demaris, 14 N. D. 465, 105 N. W. 236; Ottow v. Friese, 20 N. D. 86, 126 N. W. 503. Black's Law Dictionary, 3d ed., defines final decision as "One which settles rights of parties respecting the subject-matter of the suit and which concludes them until it is reversed or set aside." Section 1, chapter 225, N. D. Session Laws 1939, provides: "Any and all taxes levied and assessed against taxable property valued by local assessors, to the extent that said tax charges exceed the amount that said tax charge would have been had the original final determination of value been limited to the full and true value thereof in money, shall be null and void."

The final determination referred to in this section must mean the determination arrived at when the regular course of assessment has been completed by the certification of the State Board of Equalization. The word "final" must be presumed to have been used in the same sense in the following section. The assessment becomes final under the provisions of § 2 when there has been an "original final determination of value" within the meaning of § 1. When certification is made by the State Board of Equalization the "assessment becomes final" within the purview of the language of § 2, chapter 225, N. D. Session Laws 1939. Thus, the language of this act limits the filing of petitions for relief thereunder to the period of one year after the certification by the State Board of Equalization to the county auditor. It therefore follows that under the terms of the act, the petition was premature as to the 1939 taxes, and it was too late as to the taxes for 1937 and prior years.

We now reach the question as to whether, under this act which became effective July 1st, 1939, the petitioner may secure relief as to taxes resulting from assessments made in 1938—the process of assessment for that year having been completed with the certification of the State Board of Equalization to the county auditor of Hettinger county in August, 1938.

The assessment process, with respect to the 1938 taxes, had been

completed before chapter 225 became effective. The application of this chapter to those assessments would be retroactive. This court has adopted the general and well established rule of statutory construction that an act of legislature is presumed to be prospective unless the contrary appears. It is presumed that the legislature intends a statute to operate prospectively only unless it clearly manifests such contrary intention. Petters & Co. v. Nelson County, 68 N. D. 471, 281 N. W. 61; Ford Motor Co. v. State, 59 N. D. 792, 231 N. W. 883; E. J. Lander & Co. v. Deemy, 46 N. D. 273, 176 N. W. 922; Adams & F. Co. v. Kenoyer, 17 N. D. 302, 116 N. W. 98, 16 L.R.A.(N.S.) 681; Clark v. Beck, 14 N. D. 287, 103 N. W. 755. We have recently applied this same principle to the construction of a constitutional amendment in the case of State ex rel. Stutsman v. Light, 68 N. D. 513, 281 N. W. 777. The application of this general principle leads us to a prospective construction of the statute in question. It is argued, however, that the provision giving to the property owner the right to proceed under the statute within one year after any assessment becomes final, is applicable to the 1938 assessment, inasmuch as one year had not elapsed between the certification of the State Board of Equalization and the filing of the petition. Such application of the statute, however, would be retroactive in so far as its effect on the 1938 assessment is concerned. The language is consistent with either a prospective or a retrospective application, and is not indicative of legislative intent one way or the other. It does not conflict with the application of the principle heretofore expressed. Had the legislature intended to apply the statute retrospectively to assessments that had already become final, it could have so indicated in a few words, and it is proper to infer that it would have done so. This is demonstrated by a provision which the legislature inserted in chapter 276, N. D. Session Laws 1931. That act set up a procedure "for the abatement of unjust or invalid assessments and refund of unjust or invalid taxes." It provided that it should apply only in certain prescribed cases, and authorized the filing of an application for abatement or refund of taxes with the board of county commissioners on, or before, the first day of November in the year in which such taxes became delinquent. The legislature left no doubt of its intention with regard to prior assessments. It said, "The provisions of this article shall apply to assessments and taxes hereto-

fore or hereafter made or levied." It is significant that the legislature made no such provision with regard to chapter 225, N. D. Session Laws 1939.

Even more significant is the fact that chapter 225, as originally introduced in the legislature, specifically stated in the title to the act that it provided "a remedy for past and future excessive charges," while in the body of the act it was made applicable to delinquent taxes "even though such delinquent taxes have merged into tax certificates or tax deeds to the county." The original bill was amended by striking out everything after "A Bill," and completely rewriting it. In the amended bill reference to past charges and delinquent taxes was omitted.

It is suggested that chapter 225 is remedial only, and that the presumption against a retroactive construction of a remedial statute does not apply with the same force as to a statute affecting substantial rights. It is further argued that the right to abatements was provided by chapter 276, N. D. Session Laws 1931, and that chapter 225 merely provides the procedure by which persons against whom excessive taxes have been assessed may apply collectively for relief that was available to them individually under the 1931 Act. The premises upon which this argument is based, however, are unsound. Chapter 225 does more than provide a new procedure for tax abatement—it pronounces null and void all taxes in excess of the amount such taxes would have been had the assessment been limited to the full and true value in money.

In order to determine the full and true value in money, the statute sets up a new authority—the board of county commissioners. In the regular process of making the original assessment, the board of county commissioners acted as a board of review and equalization. N. D. Comp. Laws 1913, § 2138. The assessment upon which the Board thus acted was originally made by local assessors. Under chapter 225, the county commissioners act not as a board of review or equalization, but as a board with power to fix "the then true value" of property in money. After having thus acted, the board of county commissioners, if required by the petition, determines the amount of the tax by applying to the value so fixed the consolidated levy applicable in the respective taxing districts within the county. Upon receipt by the county treasurer of the amount of tax so determined, the county treasurer is authorized to issue tax receipts and the balance of the tax charges for

that year shall be abated. Thus, under chapter 225, the county commissioners may make a determination of value and a redetermination of the amount of tax to be paid which supersedes the action of the local assessors, boards of review and State Board of Equalization. The county auditor has been entirely omitted from the procedure under chapter 225. If the petition requires the determination of the tax charges the county commissioners apply the consolidated levy to the value fixed and determine the amount of the tax, a duty which the county auditor performs under the regular procedure of assessment and levy pursuant to the provisions of § 2148, N. D. Compiled Laws 1913, and the Initiated Measure adopted June 29, 1932. In the order determining such charges the county commissioners must order that upon payment thereof the balance of the tax shall be abated. Chapter 225 is a hybrid that contains attributes of both assessment and abatement.

Section 176 of the Constitution of the state of North Dakota originally required the taxing of property according to its true value in money. This requirement was omitted when the section was amended in 1914. Since that time the Constitution has contained no requirement to the effect that property should be either assessed or taxed at its true value in money. Statutes, however, have provided this requirement—the last one being contained in the Initiated Measure approved June 29, 1932, and appearing on page 493, N. D. Session Laws 1933. This act provides, "All property, real, personal and mixed, subject to a general property tax, not exempted by law or subject to any gross sales or other lieu tax shall be valued and assessed at fifty (50) per cent of the full and true value thereof, except farm buildings and improvements, which are hereby exempted from all taxes. Assessors and Boards of Review shall assess and return all taxable property at its full and true value, and it shall be the duty of the county auditor after equalization by the State Board of Equalization to make the computations necessary to reduce such assessed value to said fifty (50) per cent."

Prior to the enactment of chapter 225, N. D. Session Laws 1939, no law purported to pronounce taxes or any part thereof based upon an excessive assessment null and void. Procedure was provided for making an application for relief from such an assessment to the board of

county commissioners who were empowered to grant abatements and refunds in certain cases with the consent of the state tax commissioner. N. D. Sess. Laws 1931, chap. 276. Chapter 225, having pronounced certain excessive taxes void and having set up a system of determining values for entire taxing districts as well as providing relief to individuals, goes beyond matters of procedure and deals with substantial rights. It purports to create rights which, if established retroactively, give rise to serious questions of constitutionality—a matter which we will later discuss in more detail.

In Mississippi C. R. Co. v. Hattiesburg, 163 Miss. 311, 141 So. 897, the court construed a statute authorizing the refund of taxes erroneously paid, whether paid under protest or not. The law was held not to permit recovery of taxes erroneously paid before the law became effective because the statute was construed to be prospective and not retrospective, it being stated that statutes will be given a prospective operation unless a contrary intention is shown. The court further said, "A statute should not be given an effect which imposes an additional burden on past transactions, unless that plainly appears to be the intention of the legislature."

In determining whether the statute in question was intended to apply retroactively, consideration must also be given to the question of the constitutionality of the act if so applied. The Bank of North Dakota has intervened in this action as a creditor holding general obligation bonds and registered warrants of the county, registered warrants of school districts in which some of the land is situated, and certificates of indebtedness of the state of North Dakota. The Bank asserts that these obligations are contracts of the state and its subdivisions which are impaired by the statute and to the extent that this argument applies to a retroactive interpretation of the law it merits consideration here.

Under chapter 247, N. D. Session Laws 1933, as amended by chapter 283, N. D. Session Laws 1935, counties, townships, school districts and other specified political subdivisions of the state are authorized to borrow money upon certificates of indebtedness. It provides that a certificate of indebtedness shall consist of an agreement on the part of the taxing district to pay a specified sum on a specified date with interest at a specified rate, and further requires that the certificates "be pay-

able out of funds derived from delinquent taxes levied for the current year and for previous years, and which have not been set aside for the payment of other certificates of indebtedness." Thus, taxes for the current year and certain other years are, by statute, specifically pledged to the payment of the certificates. The final paragraph of this law permits taxing districts that are unable to sell certificates of indebtedness, to issue warrants in payment of current expenses "but not in excess of taxes levied but uncollected, and not otherwise encumbered, and the funds derived from the collection thereof shall constitute a special fund and *the exclusive source of revenue for the payment of such warrants.*" (Italics supplied.) By this provision, uncollected taxes are not only permitted to be pledged but constitute the only source from which the warrants can be paid. This court may take judicial notice of the stringent finances of many political subdivisions of the state, and that many of these subdivisions have issued certificates of indebtedness or warrants.

Chapter 183, N. D. Session Laws 1937, authorizes the state of North Dakota to borrow money through the medium of certificates of indebtedness "sold only against that portion of the uncollected general property state tax levied by the State Board of Equalization, to defray the general expenses of the State Government, known as the general fund, . . ." The act further provides that the certificates shall be payable primarily out of funds derived from the collection of that tax. The Bank of North Dakota holds such certificates to the extent of $666,000. Its challenge to the constitutionality of chapter 225 on the ground that it impairs these obligations presents a serious question if the statute is to be construed as retroactive.

In determining whether chapter 225, N. D. Session Laws 1939, applies retroactively to assessments made and taxes levied in 1938, we cannot ignore the questions of constitutionality that may be raised by the creditors of the taxing districts who hold warrants and certificates of indebtedness issued against uncollected taxes levied for that year and who purchased these obligations prior to the time the statute went into effect. The rights of these creditors, under their contracts, present grave questions of constitutionality under a retrospective construction of the statute. In State v. Burleigh County, 55 N. D. 1, 212 N. W. 217, this court said that, "It is a sound rule of statutory construc-

tion, said to be elementary, that where a statute is susceptible of two constructions by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided it is the duty of courts to adopt the latter construction." See also State v. Osen, 67 N. D. 436, 272 N. W. 783. This principle of statutory construction is approved by many authorities cited under 11 Am. Jur. 725, Constitutional Law, § 97, and 16 C. J. S. Constitutional Law, § 98. This rule has been adopted by the United States Supreme Court. Northwestern Bell Teleph. Co. v. Nebraska State R. Commission, 297 U. S. 471, 80 L. ed. 810, 56 S. Ct. 536; National Labor Relations Bd. v. Jones & L. Steel Corp. 301 U. S. 1, 81 L. ed. 893, 57 S. Ct. 615, 108 A.L.R. 1352.

The question as to whether chapter 225, N. D. Session Laws 1939, may be applied retroactively either to 1938 or prior taxes is determined by these two rules of statutory construction: First, it is presumed that the legislature intends a statute to operate prospectively only unless it clearly manifests a contrary intention; second, where a statute is susceptible of two constructions by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, it is the duty of the courts to adopt the latter construction. Both of these rules militate against a retroactive construction, and impel us to hold that the statute may only be invoked as to tax assessments made after the law became effective. The statute as thus construed operates only upon assessments made after July 1, 1939, concerning which relief is sought by application made within one year after the certification by the State Board of Equalization to the county auditor. Since the statute does not operate retroactively, it affords the plaintiff no relief for assessments made during the year 1938 or prior years. His application to the board of county commissioners was made on July 7, 1939. On that date, the 1939 taxes were still in the process of assessment, review and equalization. The 1939 assessment had not become final and as to that year the plaintiff's petition was premature. The statute not being applicable to any of the assessments set forth in the petition, no relief can be granted to the plaintiff thereunder.

All of the issues presented in this case have been determined. Some questions involving construction and constitutionality of chapter 225

that may arise in connection with the prospective operation of the statute were presented on oral argument and in the briefs. The points which they present are not material to the determination of any of the issues in this case. These questions, therefore, must await presentation in connection with issues which require their consideration. The judgment of the district court is reversed in so far as it applies to taxes levied or assessed for the year 1938. In other respects it is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BURR, and BURKE, JJ., concur.

MORRIS, J. (on rehearing). A rehearing was had in this case upon all points involved in the decision. We have given further consideration to both the briefs and oral arguments with reference to all matters and adhere to our former decision.

A new point was presented by the petitioner and appellant upon the rehearing which merits discussion here. He now contends that in event he is not entitled to relief under chapter 225, N. D. Session Laws 1939, his petition to the board of county commissioners of Hettinger county upon which these proceedings were instituted is sufficiently broad to entitle him to abatement or compromise of his taxes under the provisions of §§ 1 and 5 of chapter 276, N. D. Session Laws 1931, and that the evidence presented in these proceedings shows that he is entitled to such an abatement or compromise. Under these sections the board of county commissioners is authorized, subject to the approval of the tax commissioner, to abate in whole or in part assessments determined to be invalid in certain cases, among them being: "When the board of county commissioners is satisfied beyond a doubt that the assessment of the real or personal property described in the application for abatement is invalid, inequitable or unjustly excessive, the board may, if such application is filed on or before the first day of November in the year in which such taxes become delinquent, abate any part thereof in excess of a just, fair and equitable assessment."

The appellant contends that he is entitled to relief as to his 1938 assessments under this provision. Section 5 of the same act reads, "Whenever taxes on any real estate remain unpaid and such property has not been sold to any purchaser other than the county, and the board

of county commissioners may, subject to the approval of the state tax commissioner, by reason of depreciation in the value of such property or for other valid cause, compromise with the owner of such property by abating a portion of such delinquent taxes on payment of the remainder." The appellant contends that under this provision he is entitled to relief as to all of his delinquent taxes.

This proceeding was instituted by a petition which the appellant filed with the board of county commissioners of Hettinger county. In this petition he sets forth, "That this petition is made pursuant to Senate Bill No. 41 enacted by the Legislative Assembly of North Dakota in the year 1939, and all of the essential and material parts, elements, and factors of said Senate Bill No. 41, are made a part of this petition with the same force and effect as if the entire said Senate Bill No. 41 was fully set out in this petition."

In the prayer of his petition the appellant seeks relief of the nature provided for by chapter 225, and closes with this supplication, "and that your petitioner be granted all of the relief that he is entitled to under all the laws of the state of North Dakota and Senate Bill No. 41." Senate Bill No. 41 is chapter 225, N. D. Session Laws 1939. The board of county commissioners heard the petition and rendered a written decision in which it is said that the petitioner filed a petition "praying that said board fix the basic, full and true value in money of certain property therein described, under the purported authority of chapter 225, Laws of North Dakota for 1939, and the matter having duly come on for hearing. . . ."

The county commissioners regarded the proceeding as one coming under chapter 225. The petitioner appealed to the district court from the decision of the board of county commissioners. It appears from the record that the proceeding was tried in the district court upon the theory that relief was sought under chapter 225, N. D. Session Laws 1939. This case was briefed and argued in this court solely upon the theory that relief was sought under this chapter. It was not until upon reargument that the appellant sought to invoke chapter 276, N. D. Session Laws 1931.

Were the appellant permitted to change the theory of his case upon rehearing in this court we would nevertheless be compelled to deny him relief. The right of appeal under chapter 276, N. D. Session Laws

1931, is a limited right. Section 7 of that act provides, "The same right of appeal to the district court from the *decision* of the board of county commissioners *abating, refunding* or *compromising any tax* shall exist as in cases under § 3298 of the Compiled Laws of North Dakota for the year 1913 and acts amendatory thereof. The right to proceed, under provisions of law in such case made and provided, to recover taxes paid under protest shall not be qualified or limited by this act." (Italics supplied.)

Section 3298, Compiled Laws of North Dakota, provides for appeals from decisions of boards of county commissioners to the district court "by any person aggrieved." When that section is read in conjunction with § 7 it appears that appeals may be taken from decisions of the county commissioners abating, refunding or compromising any tax and that such an appeal may be taken by any party aggrieved by such decision. In this case there is no decision of the board of county commissioners abating, refunding or compromising any tax. There is, therefore, no right of appeal. The decision in this case if considered under the provisions of chapter 276, N. D. Session Laws 1931, denied to the plaintiff any abatement or refund. Such a decision is not appealable. Should appellant's petition to the board of county commissioners of Hettinger county be construed to come within the provisions of that chapter, the decision against him by the county board was final. It was only by proceeding under chapter 225, N. D. Session Laws 1939, that the plaintiff had the right to appeal to the district court and subsequently to this court as he did. Since he is entitled to no relief under chapter 225, the decision heretofore rendered must stand.

NUESSLE, Ch. J., and CHRISTIANSON, BURR, and BURKE, JJ., concur.